## BERNHEIMER v. SCHMID.

(Supreme Court, Appellate Division, First Department. April 18, 1902.)

PARTNERSHIP—DISSOLUTION—RECEIVER—CONTINUING BUSINESS—PERMISSION TO ADVANCE MONEY.

The court adjudged that a copartnership in a brewery business should be dissolved, but the receiver was prohibited from selling any account, or the good will, machinery, etc.; and until the property was sold, or further order made, he was directed to carry on the business. The copartnership was accustomed to advance money to saloon keepers for the fitting up of their saloons,—taking back chattel mortgages,—and also to advance money for the saloon licenses, which were assigned to it as security. *Held*, that on a showing that the licenses were about to expire, and the customers could not renew them, and the market for the beer would be lost, the receiver might be granted permission to advance money for the renewal of the licenses, granted in such manner as not to bind the parties to a continuance of the business for any fixed period, nor to interfere with any application to have the business sold.

Appeal from special term, New York county.

Action by Simon E. Bernheimer against Josephine Schmid for dissolution of a partnership. From an order granting an application by John M. Bowers, receiver, for permission to advance money, defendant appeals. Affirmed.

See 69 N. Y. Supp. 659; 73 N. Y. Supp. 767.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.
Wm. A. Jenner, for respondent.
John M. Bowers, in pro. per.

PATTERSON, J. The embarrassment in which the receiver is placed in this case concerning the administration of the receivership, and the necessity which compelled him to apply to the court for instructions in a very serious conjuncture, arise from the peculiar provisions of the interlocutory judgment in and by which he was appointed. The action was brought to dissolve a copartnership existing between the plaintiff and the defendant. The court adjudicated that the copartnership be dissolved. The ordinary and necessary effect of such an adjudication would be to require the cessation of the partnership business, the liquidation of its affairs, and the distribution of the assets, or proceeds of the assets, between the two part-

ners. The peculiarity of the decree in this case is that, although the dissolution is adjudicated, the receiver is only empowered, at his discretion, to make sale of the partnership property assets, and effects, and he is expressly prohibited, without the further order of the court, from selling any account of debts due the firm, or claims of the firm against any one, or the good will or trade-marks of the firm, or the leasehold interests to which the firm is entitled, or any part of the machinery or buildings of the firm used in manufacturing, or any real estate of the firm; and then the decree proceeds to provide as follows:

"That until all of said property is sold, or the further order of the court, and for the purpose of making such sale or sales more advantageously, said receiver shall continue the business of the old firm; and said receiver may reimburse himself out of the proceeds of said property for such disbursement as he may from time to time make in the carrying on of said business."

This judgment is not now before us for review, although we are advised by the record that the plaintiff has appealed from it. But as it is a binding judgment until reversed, we may only construe it at the present time in connection with the application of the receiver involved in this appeal. Plainly, by this interlocutory judgment there is cast upon the receiver the duty of continuing the business as it was carried on by the copartnership. There is nothing in the decree which requires that such business shall be carried on by the receiver for any fixed period, and evidently it was the intention of the court to impose upon him the duty of carrying on the business until a sale could be made advantageously of the assets of the partnership in his hands. The duty of carrying on the business is made mandatory. By the provision of the judgment, he must do so until the further order of the court, and in the meantime he is absolutely restrained by the terms of the judgment from selling those things which are necessary to the carrying on of the business. In the performance of the duty enjoined upon him, he now finds himself in a position in which, in order to carry on the business and to comply with the requirements of the judgment, it is necessary for him to advance large sums of money to customers and debtors of the copartnership; and he has satisfactorily shown that, if that course is not pursued, peril will be incurred of the loss of an immense sum of money to the receivership. His application to the court below was for permission to advance the money referred to, and from an order of the court granting such application this appeal is taken. The requirement of the interlocutory judgment that the receiver shall carry on the business implies that it shall be carried on as it has been conducted by the copartners before the dissolution of the firm was decreed. What the attitude of the defendant, who appeals from the order, is, with respect to this interlocutory judgment, we do not quite gather from the record. It is asserted by the respondents that the form of the decree was prepared by the defendant's attorney. We are not distinctly informed by the record that she has appealed from this interlocutory judgment. It is shown, however, that, under the provisions requiring the receiver to carry on the business, specific authority had been given by the court to buy horses and pay

bills for merchandise; and that permission has passed unchallenged by the defendant.

The facts connected with the present emergency are, briefly, the following: The plaintiff and the defendant were copartners in the business of brewing beer, and were the proprietors of one of the largest establishments of that character in the city of New York. Their extensive plant, covering nearly a block of ground in that city, is built upon land which the court has decreed to belong to the plaintiff and defendant as tenants in common, and not to constitute a partnership asset. The property belonging to the copartnership is worth millions of dollars, and something over two millions of dollars of the copartnership book assets consists of indebtedness due to the copartnership from customers supplied by it with beer it manufactured. These customers are saloon keepers, and are in number something over 700. The relation existing between the copartnership and the customers (being the same relationship as exists between almost all the brewers in the city of New York and their customers) is that the copartnership would advance to the saloon keepers moneys for the fitting up and appointment of their saloons, and take chattel mortgages upon the personal property of the saloon keepers as security for the money advanced. In addition thereto, the copartnership would advance to these saloon keepers the moneys necessary to take up licenses under the liquor tax law; and, as security for those moneys, those licenses would be assigned to the copartnership, which would then supply beer to them, and thus find an outlet and market for its manufactures. It is now made to appear that the licenses to those saloon keepers through whom the beer is sold will expire on the 1st of May, 1902, and that such licenses must be renewed, or new ones issued.. A great majority of the customers of this copartnership and of the receivership, it appears, are unable to pay their license fees. The receiver asked and obtained the permission of the court to advance the moneys necessary for the payment of those license fees. If they are not paid, not only is the market for the beer manufactured in the brewery in charge of this receiver, to a great extent, lost, but the chattel mortgages and the immense indebtedness covered by those mortgages are imperiled. It seems to be absolutely necessary, in the interest of both the plaintiff and the defendant, that, in order to preserve the assets from ruinous loss, the receiver should be authorized to make the advances of money to renew these licenses. The grave results of withholding permission for him so to do are in no sense conjectural, and we think it was the obvious duty of the court to grant the application of the receiver to advance these moneys, under the situation created by the terms of the interlocutory judgment. But that permission should not be granted in such manner as to bind the parties to the action to a continuance of the business for any fixed period, nor should it be so construed as to prevent the defendant from making application to the court to have the business sold, as she may be advised. Leave should be given to the receiver merely to apply moneys in his hands to the taking out of licenses for the customers. That being done, he may be able, as is suggested, to dispose of his chattel mortgages and in-

terests, such as they are, in the various saloons, to other brewers, who may take over the custom of the saloon keepers. The receiver should not be allowed to borrow money on the credit of the receivership, nor to create indebtedness for the parties to the action, nor to give liens upon the assets; but the authority given to him to advance moneys should be limited to such moneys as he has in hand or may have in hand on the 1st of May, at which time the license fees become due. The affirmance of this order is placed upon the ground that under the terms of the decree enjoining a duty upon the receiver, and the absolute necessity existing for the preservation of that business which the receiver is thus required to carry on under that decree, the advancement of these moneys must be approved.

The order appealed from, to the extent indicated, must be affirmed, with $10 costs and disbursements. All concur.